IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:24-cr-84 |
| NICHOLAS NOSEGBE, | The Honorable Anthony J. Trenga |
| *Defendant.* | |

## POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING

The defendant, Nicholas Nosegbe, while on board a domestic flight from Detroit, Michigan to Dulles International Airport, sexually assaulted V-1 multiple times, beginning the ongoing sexual assault, which lasted the better part of an hour, when she was asleep and trapped in the window seat. Unfortunately, V-1 was not the first of the defendant's victims. At both of his prior places of employment, and within the last three years, the defendant similarly sexually assaulted women and then lied to authorities when confronted about it. For these reasons and for all the reasons outlined below, the Government requests that the Court impose the parties' jointly recommended sentence of **six months'** home confinement followed by five years of supervised release, the imposition of a special assessment, and the agreed-upon restitution amount of 20,000 dollars to V-1. PSR ¶ 10.

### BACKGROUND

As set forth the Presentence Report (PSR) as well as in the statement of facts which the defendant admitted during his plea colloquy, the defendant's conviction arises from the sexual

assault of V-1 while on board a non-stop flight from Detroit, Michigan, to Dulles International Airport.

V-1 boarded the flight after Nosegbe, asking him to get up so she could move into the window seat. ECF 31. They had a brief, uneventful interaction. *Id.* V-1 then fell asleep and was still asleep when Nosegbe started touching her. She awoke to a touch on her outer thigh and assumed it was accidental, but Nosegbe then started pulling at her pocket with his fingers. PSR ¶ 10; *see also* ECF 31. V-1 was trapped in the window seat and knew that if she alerted someone, Nosegbe would see her doing so. She tried to move her body away from him as he forcibly pinned her leg under his, placing his leg over hers and covering her leg and his with his jacket so passerby would not see. *Id.* The touching then escalated to Nosegbe touching V-1's inner thigh and massaging her vagina. *Id.* V-1 kept trying to pull away but she could not escape the defendant's grasp. *See* PSR ¶ 30; ECF 31. Towards the end of the flight, Nosegbe attempted to grab V-1's arm and pull it under his jacket where his leg still pinned hers. ECF 31. She yanked her arm away. *Id.* During the encounter, Nosegbe made an up and down motion with his arm and based on the movement and vibration, V-1 believed he was masturbating but she did want to open her eyes to confirm. PSR ¶ 10. When the flight started to land, the defendant finally stopped the assault. *Id.*

V-1 opened her eyes and looked at the defendant as he gathered his luggage, waiting for him and other passengers to deboard to put distance between them before she herself deboarded. PSR ¶ 30. Once in the airport, she again saw him in the crowd behind her and ducked into a bathroom, terrified that he had followed her. *Id.* She texted her friend to share her location and noted that something had happened on the plane. *Id.* In the days and weeks that followed, V-1 had trouble sleeping, cried at random times of day, sought out therapy, and struggled to deal

with what had happened. Seven days after the incident, she resolved with the help of a friend to report it. Unfortunately, she was sent on a wild goose chase, reporting it to local police in Detroit, local police in California, TSA, Delta, then Delta a second time, before finally being routed to the FBI. ECF 31 at 4-5.

V-1 remained resolute throughout, and after interviewing her, the FBI located the defendant by seat number, and opened an investigation, quickly learning that the defendant had two prior similar sexual assault allegations at two different workplaces. *See* ECF 31 at 5; *see also* PSR ¶¶ 31-33.

In 2022, the defendant and V-3, an adult female, were employed by the Texas Department of Criminal Justice as Correctional Officers. PSR ¶ 32. On March 31, 2022, while V-3 was asleep and sitting in a chair, she awoke to the defendant kissing her. *Id.* As she was waking up, the defendant attempted to kiss her again. *Id.* The defendant, who was in a standing position, then forcibly placed his hands on her inner thigh with his thumbs pushing into her vagina. ECF 27 at 2-3. V-3 reported the assault to management and an internal investigation was initiated. *Id.* The investigation resulted in a finding of "guilty." ECF 27 at 2-3. The defendant was ultimately dismissed from his position for "Discourteous Conduct of a Sexual Nature." *Id.* A video recording captured the incident.

Then, in late August of 2023, V-2 reported to police that the defendant, who was then working for a home healthcare facility in Manassas, Virginia, approached her and grabbed her by the shoulders, and kissed her on the mouth for approximately 1-2 seconds. PSR ¶ 33. V-2 stated she immediately pushed him away. ECF 27 at 2-3.

Later that month, while at another jobsite in Fairfax County, Virginia, the defendant approached V-2 and stood over her. *Id.* The defendant then used his open hand to grab V-2's breast,

which she removed. *Id.;* PSR ¶ 33. V-2 told him to "please stop" and the defendant walked out of the room. ECF 27 at 2-3.

Two days later, in the late evening, V-2 was sitting on the couch with a blanket on her lap to keep warm. *Id.;* PSR ¶ 33. The defendant walked into the room and sat next to her on the couch. *Id.;* PSR ¶ 33. The defendant attempted to touch V-2's leg by reaching for her under the blanket before she blocked his advances. *Id.;* PSR ¶ 33.

A criminal complaint against the defendant was filed on March 29, 2023. ECF No. 1. The defendant first appeared in this District on April 5, 2024, after his arrest, and was released on bond. ECF No. 9. Probable cause was found at a preliminary hearing held before the Honorable Judge Lindsay Vaala on April 9, 2024. ECF No. 14. On April 24, 2021, a federal grand jury returned an indictment charging Defendant with two counts of 18 U.S.C. § 2244(b) and 49 U.S.C. § 46506(1) and one count of simple assault under 18 U.S.C. § 113. ECF No. 15. The defendant was arraigned on May 1, 2024. ECF No. 19.

## ANALYSIS

This Court must consult the Guidelines as well as the factors set forth in 18 U.S.C. § 3553(a) when making a sentencing decision, though the Guidelines are advisory. *See United States v. Booker*, 543 U.S. 220 (2005). The Supreme Court has directed district courts to "begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). In doing so, a district judge may not "presume that the Guidelines range is reasonable…[but] must make an individualized assessment based on the facts presented." *Id.* at 50. In making this individualized assessment, "the court shall consider [the Guidelines] range as well as other relevant factors set forth in the guidelines and those factors set

forth in [18 U.S.C.] § 3553(a) before imposing the sentence." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). Pursuant to 18 U.S.C. § 3553(a), the court should consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to, among other things, reflect the seriousness of the offense and adequately deter criminal conduct; (3) the kinds of sentences available; (4) the Sentencing Guidelines; (5) policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct; and (7) the need to provide restitution to victims of the offense. Ultimately, the sentence imposed must meet a standard of reasonableness. *See Booker*, 543 U.S. at 260-61.

In calculating a term of imprisonment, a defendant is entitled to receive credit for time served for which a defendant is in official custody for a charged offense that has not been credited against another sentence. *See* 18 U.S.C. § 3585. Any amount of uncredited time served by a defendant is determined by the Attorney General, through the Bureau of Prisons. *United States v. Wilson*, 503 U.S. 329, 334–35 (1992).

### A.     Statutory Minimums and Maximums

Abusive Sexual Contact carries a maximum term of imprisonment of two years. 18 U.S.C. § 2244(b). In addition, the charge carries a maximum fine of up to $250,000, $5,100 in special assessments, and a minimum term of five years of supervised release and up to life. In addition, the charge carries with it mandatory restitution. In this case, the parties have jointly agreed to restitution in the amount of 20,000 dollars.

### B.     Sentencing Guidelines

The base offense level for the defendant's abusive sexual contact is 12. *See* U.S.S.G. § 2A3.4(a)(3). In accordance with the defendant's plea agreement, the government supports a two-

point reduction for acceptance of responsibility, resulting in a total offense level of 10. *See* U.S.S.G. § 3E1.1(a). The defendant has no prior criminal convictions and therefore qualifies as a "zero-point" offender to receive an additional two-point reduction. *See* U.S.S.G. § 4C1.1.[1] The final offense level is 8. Because the defendant is in the criminal history category of I, the applicable guidelines range is 0 to 6 months imprisonment.

      **C.**      **Statutory Analysis and Recommendation**

The parties jointly agreed to recommend a sentence of six months home confinement with supervised release to follow in exchange for the defendant's guilty plea. That joint recommendation and plea was largely based on the defendant's medical state, which included a diagnosis of Stage IV nasopharynx cancer. PSR ¶ 64.

*See, e.g.* [https://www.cancer.org/cancer/types/nasopharyngeal-cancer/detection-diagnosis-staging/survival-rates.html](https://www.cancer.org/cancer/types/nasopharyngeal-cancer/detection-diagnosis-staging/survival-rates.html) (five-year survival rate for distant 49% (spread to distant parts of body); regional 72% (spread to nearby parts of the body)).

Therefore, in accordance with the agreed-upon plea, the Government recommends six months of home confinement, followed by five years of supervised release.

The nature and circumstances of the offense are egregious and warrant a Guideline sentence in this case and the jointly recommended sentence. The defendant sexually assaulted V-1 for an hour, using his physical strength to forcibly pin down her leg. She was asleep when the assault began and unable to defend herself. The defendant hid his actions from others on the

---

[1] The "zero-point" offender reduction became effective on November 1, 2023 and allows certain kinds of offenders a reduction in offense gravity score. Specifically excluded from this category of offenders are those charged with "sex offenses." However, under the version of the Guidelines that was current at the time the defendant committed the offense, "sex offenses" was defined to include only offenses perpetuated against minors. That oversight has since been fixed and the Guidelines have been amended so that, if Nosegbe committed this offense today, he would not receive the two point reduction. Therefore, his Guidelines would be **6 to 12 months'** imprisonment.

plane and used the fact that she was trapped in the window seat to his advantage. There was no way for her to alert someone on the plane without him seeing her do so or her asking him to let her go to the bathroom, and she had no idea what he might do if she made such a request. The sexual assault involved her outer thigh, her inner thigh, an attempt to unzip her pants, his fingers in the pocket of her pants, and finally him massaging her vagina.

The history and characteristics of the offender would ordinarily warrant a significant upward variance from the Guidelines in this case, both because the "zero point" offender reduction was recently amended to exclude eligibility for all sex offenses (against adults and minors) but more importantly because the defendant's actions here were part of a course of conduct. This was not an isolated bad decision for Nosegbe in a moment of weakness. He perpetuated similar assaults against two other women at two prior places of employment, and one of those assaults was captured on video. That assault, against V-3, involved forcibly holding down the victim while he assaulted her, causing pain and injury. Because it happened while she was asleep, V-3 lost her sense of safety and security and, years later, she still suffers from anxiety and sleepless nights. Moreover, both of the assaults against V-2 and V-3 are recent, occurring within the last three years. And, V-1, V-2, and V-3's stories are likely three of many. Sadly, we know that most victims of sexual assault never report for a myriad of reasons including their fear of the perpetrator, embarrassment at what occurred, and questions about whether anyone will believe them.

That said, the history and characteristics of the defendant also include his current physical and medical condition and need for treatment. Nosegbe has a serious form of cancer that is life-threatening. Nosegbe had a team of doctors caring for him, and the Government did not want to

interfere with that care.[2]  For that reason, despite his very serious conduct and the other aspects of his history and characteristics which would otherwise dictate an upward variance, the Government maintains that the appropriate sentence in this case is the six-month sentence of home confinement outlined in the plea agreement.

The need to promote respect for the law and deter the defendant from future similar behavior both warrant the recommended sentence in this case.  The defendant was terminated from employment after victimizing V-3, yet a little over a year later he victimized V-2.  And despite an investigation relating to that conduct, he victimized V-1 just four months after victimizing V-2.  Termination and police investigation clearly did not stop the defendant from continuing to harass and sexually assault women.

Finally, the Government submits that the recommended sentence is necessary to protect the public.  The defendant's callousness towards women and lack of remorse is palpable.  The judicial system failed V-1 when it comes to the defendant's conduct.  After two prior reports of sexual assault, he should never have been free to do what he did on that plane.  Nosegbe's actions have led to long lasting trauma for these undeserving women, trauma that will last well after he has completed his sentence.

---

[2]  The Government's understanding is that Nosegbe no longer has health insurance and so is not able to see the team of doctors he was previously seeing and that his living situation is unstable.  If a halfway house, or even incarceration, would present a better location for Nosegbe to serve the agreed-upon six months' home incarceration, the Government has no opposition.

## CONCLUSION

For the foregoing reasons, the United States respectfully recommends that a sentence of six months of home confinement, five years of supervised release, and 20,000 dollars in restitution to V-1.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____

April Russo
Assistant United States Attorney
Yuliana Reyes
Special Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 299-3919
Email: april.russo@usdoj.gov

Date: November 5, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on November 5, 2024, I caused a copy of the foregoing memorandum to be filed with the Clerk of Court using the CM/ECF system, which will automatically generate a Notice of Electronic Filing (NEF) to all counsel of record.

          s/April N. Russo
April Russo
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 299-3919
Date: November 5, 2024          Email: april.russo@usdoj.gov